[No. 20888.   Department Two.   March 19, 1928.]

HENRY J. THOMPSON, *Respondent,* v. O. MOE *et al., Defendants,* NEW YORK INDEMNITY COMPANY, *Appellant.*[1]

[1] INDEMNITY (3)—BONDS—CONSIDERATION. A vendor's indemnity bond to protect against mechanic's liens upon the house under construction, exacted by the purchaser before paying the balance of the purchase price, is not a part of the original transaction between the parties, and therefore not supported by a sufficient consideration where the sum advanced was used to discharge mechanics liens which the purchaser would be required to pay in any event.

Appeal from a judgment of the superior court for King county, Davidson, J., entered July 1, 1927, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Roberts & Skeel* and *Wm. Truscott,* for appellant.

*H. B. Butler,* for respondent.

MAIN, J.—This action was brought to recover on an indemnity bond. The trial was to the court without a

[1]Reported in 265 Pac. 457.

jury and resulted in a judgment in favor of the plaintiff and against all the defendants in the sum of one thousand dollars. From this judgment the defendant, the New York Indemnity Company, appealed. The other defendants did not appeal.

The facts essential to be stated are these: March 13, 1926, the respondent purchased from one O. Moe a house and lot in the city of Seattle. At the time, the house was in the process of construction and was completed five or six weeks subsequently. The purchase price was $7,000, as a part of which the respondent assumed a mortgage of $4,000. At the time the contract was made, $500 in cash was paid on the purchase price, leaving a balance of $2,500 to be paid. On or about April 2, 1926, Moe, needing money, requested the respondent to make a payment of $1,000. This respondent refused to do, unless a bond was given to protect him against the liens for labor and material that might accrue. Moe furnished a bond signed by himself as principal and the appellant, the New York Indemnity Company, as surety. Thereupon $1,000 was paid to Moe. On or about April 20, 1926, Moe, again needing money, requested an additional payment. At this time, there was a balance due of $1,500 upon the contract of purchase. A second bond, signed as the first, was given in the penal sum of $1,000. After this bond was executed and delivered, and before the money was paid to Moe which prompted its giving, the New York Indemnity Company became aware that the property was likely to become subject to lien claims for labor and material in a considerable amount. All the parties in interest met with a view to adjusting the matter, but no arrangement was consummated. Subsequently and on May 11, 1926, the respondent paid the balance of the purchase price, to wit: $1,500, to the Seattle Title Trust Company and accepted a deed to

the property. The trust company was directed to apply the money on claims then outstanding against the property. This was not sufficient to satisfy all of the claims. In addition to the liens taken care of by the payment to the title trust company, the respondent was required to satisfy other lien claims in the approximate amount of $1,475. Upon the first bond, the indemnity company admitted liability and paid $1,000, the penal sum thereof, to the respondent. As to the second bond, it denied liability and it is upon this bond that the action is based.

[1] The controlling question is whether the second bond, which alone is here involved, was supported by a consideration. A contract of indemnity, like any other contract, must be based upon a good and sufficient consideration, otherwise it is not valid. 31 C. J. 422. The general rule in regard to indemnity contracts is that, if the indemnity and the contract guaranteed are a part of the same transaction, the consideration of the latter supports the former, but, if they are not one transaction, the bond must be supported by a consideration independent of the consideration for the original contract. *Considine v. Gallagher,* 31 Wash. 669, 72 Pac. 96; *Title Guaranty & Surety Co. v. Packard,* 75 Wash. 178, 134 Pac. 812. The bond upon which the action is based was not a part of the original transaction. At the time the contract of purchase was made, neither of the bonds were in the contemplation of the parties. The bond, under the rule stated, then must be supported by a consideration other than that of the original contract. As stated, the money was not paid over to Moe as the bond contemplated, but was paid direct to the Seattle Title Trust Company and was applied upon lien claims. These, while then probably not perfected by the filing of a notice as required by law, were nevertheless in existence. They

were obligations which the respondent would be re-
quired to pay in any event or lose his property. The
question, then, is reduced to whether the payment of
the $1,500 to the title trust company, which was applied
upon these lien claims, was a sufficient consideration
to support liability upon the bond. Had the money
been paid over to Moe, a different question would be
presented. By paying the money to the title trust
company and having it applied upon lien claims which
the respondent would be required to take care of in
any event, the latter was in no worse position than if
the bond had not been given. In *Gates v. Herr*, 102
Wash. 131, 172 Pac. 912, quoting with approval from
Cyc., it was said:

" 'There is no consideration for a promise where no
benefit is conferred upon the promisor nor detriment
suffered by the promisee, and the promisor neither
undertakes to do anything which he is not bound to do
nor forbears to do anything which he has a right to
do. . . . The detriment to the promisee which suf-
fices as a consideration for a contract must be a detri-
ment on entering into the contract, not from the breach
of it'."

No action can be maintained on an indemnity bond
against the surety given by a builder to indemnify the
owner against loss where the bond is given after the
execution of the contract and the commencement of the
work by the builder, unless the bond is supported by
some new consideration and the payment of lien claims
is not a sufficient consideration. In 40 C. J., p. 354,
it is said:

"An antecedent promise of a contractor to give a
bond indemnifying against liens is a sufficient con-
sideration for the execution of such a bond subsequent
to the execution of the building contract, and either
before or after the commencement of the work there-
under; but in the absence of some such antecedent

agreement no action can be maintained against a surety on a bond given by a builder to indemnify the owner against loss where the bond is given after the execution of the contract and the commencement of the work by the builder, unless the bond is supported by some new consideration. The payment to subcontractors of the amount of their lien claims is not a sufficient consideration for a bond given by them to indemnify the owner against the liens of other subcontractors.''

In *Hanks v. Barron,* 95 Tenn. 275, 32 S. W. 195, the plaintiffs employed a contractor to build a house, and after partial payment discovered that the balance due was insufficient to satisfy the liens and the plaintiffs paid to the contractor a sum equal to the claim of one of the subcontractors, which was immediately paid over to such subcontractor. The latter, pursuant to agreement, executed a bond to the plaintiffs to hold them harmless for any excess they should be compelled to pay over the amount remaining in their hands to any other contractor. It was there held that the bond was without consideration because the owners would have been required to extinguish the lien claims in order to prevent the sale of their property. It was there said:

''For the reason given by the court, namely, that the defendants, Barron Bros. and Doone, the principal obligors, had liens, as subcontractors, upon the property of complainants for the aggregate sum of $183.04, at the time the bond was executed, and that the complainants, in making provision for the payment of that sum, did no more than was necessary to extinguish those liens, and prevent the sale of their property. It is true, as urged for complainants against that view, that those liens had not been matured or perfected by giving the statutory notice of an intention to claim them, but that is an unimportant circumstance in this case. The liens began the moment those defendants commenced work upon the house (*Green v. Williams,* 92 Tenn. 225, 21 S. W. 520; *Bassett v.*

*Bertorille,* 92 Tenn. 558, 22 S. W. 423; *Manufacturing Co. v. Falls,* 92 Tenn. 609, 22 S. W. 856), and the complainants were powerless to avoid them. The defendants were demanding their money upon the strength of their liens, with ample time before them to give the requisite notice. Nothing stood in the way of their giving the notice, and enforcing their liens by a sale of the property, and that speedily. The liens were already absolute and fixed, in such sense that the complainants could do nothing short of payment, or its equivalent, to extinguish or impair them, and in such sense that the claimants had only to pursue plain legal remedies to subject the property. Resort to those remedies did not become necessary."

In the case now before us the bond, as stated, was not supported by the original consideration for the contract of purchase, because it was something that arose subsequently and was not in contemplation of the parties at that time. It was necessary that it be supported by an independent consideration. The payment of the lien claims against the property by the money advanced through the Seattle Title Trust Company was not a sufficient consideration to support the bond, because, as already pointed out, these were obligations which the respondent would have been required to extinguish in order to protect his property. The action upon the bond cannot be sustained.

The cases of *Frank v. Jenkins,* 11 Wash. 611, 40 Pac. 220, and *Diamond Match Co. v. United States,* 31 Fed. 271, cited by the respondent, are easily distinguishable. In neither of those cases was there any question of a past consideration. In the former, the bond was in contemplation of the parties at the time of the original transaction between them and was supported by the same consideration. In the latter, the Diamond Match Company gave the commissioner of internal revenue a bond to keep on hand, subject to the company's order, a three months' supply of stamps printed by the

private dies of the company. The commissioner, in pursuance of this bond, did keep on hand three months' supply of stamps, which was a consideration supporting the bond. The loss occurred by reason of the keeping on hand the supply of stamps. The bond was given to induce the commissioner to have the stamps ready for the convenience of the company. There the commissioner was in a different position than he would have been had the bond not been given. He had incurred the expense necessarily incident to the creation of the supply of stamps contemplated by the bond.

It is unnecessary here to review the authorities cited in the briefs upon the proper construction to be given to an indemnity contract because, whatever the rule in that respect may be, it does not go to the extent of authorizing the court by construction to create a consideration for a bond when the facts show that none existed.

The judgment will be reversed and the cause remanded with direction to the superior court to dismiss the action as to the appellant, the New York Indemnity Company.

MACKINTOSH, C. J., FULLERTON, ASKREN, and HOLCOMB, JJ., concur.